# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **CHANTEL HALL,** | ) | |
| Plaintiff | ) | |
| | ) | Civil Action No. 2:18cv00052 |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| **ANDREW SAUL,**[1] | ) | |
| **Commissioner of Social Security,** | ) | By: PAMELA MEADE SARGENT |
| Defendant | ) | United States Magistrate Judge |
| | ) | |

*I. Background and Standard of Review*

Plaintiff, Chantel Hall, ("Hall"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), determining that she was not eligible for supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C. § 1381 *et seq*. Jurisdiction of this court is pursuant to 42 U.S.C. § 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition. Neither party has requested oral argument; therefore, this case is ripe for decision.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which

---

[1] Andrew Saul became the Commissioner of Social Security on June 17, 2019; therefore, he is substituted for Nancy A. Berryhill as the defendant in this case.

a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence.'"' *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Hall protectively filed an application for SSI on February 25, 2015, alleging disability as of March 1, 2013, based on anxiety; depression; gout; fibromyalgia; thyroid problems; migraine headaches; diabetes; a sleep disorder; diverticulitis; colitis; back problems due to scoliosis; muscle spasms; and acid reflux. (Record, ("R."), at 17, 199-203, 228.) The claim was denied initially and upon reconsideration. (R. at 74-75, 77-79, 128-29, 131-33, 135-37.) Hall then requested a hearing before an administrative law judge, ("ALJ"). (R. at 138.) A hearing was held on October 24, 2017, at which Hall was represented by counsel. (R. at 44-72.)

By decision dated February 6, 2018, the ALJ denied Hall's claim.[2] (R. at 17-37.) The ALJ found that Hall had not engaged in substantial gainful activity since February 25, 2015, the application date. (R. at 19.) The ALJ determined that Hall had severe impairments, namely irritable bowel syndrome; diabetes mellitus; headaches; mild degenerative disc disease; depressive disorder; and anxiety disorder, but he found that Hall did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404 Subpart P, Appendix 1. (R. at 19-20.) The ALJ found that Hall had the

---

[2] Thus, the relevant time period for determining disability is from March 1, 2013, the alleged onset date, through February 6, 2018, the date of the ALJ's decision.

residual functional capacity to perform light[3] work that did not require more than frequent climbing of ramps and stairs, stooping, crouching and crawling; that required no more than occasional climbing of ladders, ropes or scaffolds; that required no more than occasional exposure to moving mechanical parts, humidity and wetness, dust, odors, fumes, pulmonary irritants and vibration; that did not require her to perform more than simple, routine tasks and make simple work-related decisions; and that did not require more than occasional interaction with co-workers, supervisors and the public. (R. at 24.) In addition, the ALJ found that Hall would be off task five percent of an eight-hour workday and that she would be absent from work one day per month. (R. at 24.) The ALJ found that Hall was unable to perform any of her past relevant work. (R. at 35.) Based on Hall's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that a significant number of jobs existed in the national economy that Hall could perform, including those of a marker and a cleaner. (R. at 35-36.) Thus, the ALJ concluded that Hall was not under a disability as defined by the Act and was not eligible for SSI benefits. (R. at 37.) *See* 20 C.F.R. § 416.920(g) (2019).

After the ALJ issued his decision, Hall pursued her administrative appeals, (R. at 195, 321-23), but the Appeals Council denied her request for a review. (R. at 1-5.) Hall then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 416.1481 (2019). This case is before this court on Hall's motion for summary judgment filed July 3, 2019, and the Commissioner's motion for summary judgment filed August 2, 2019.

---

[3] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, she also can perform sedentary work. *See* 20 C.F.R. § 416.967(b) (2019).

*II. Facts*

Hall was born in 1973, (R. at 199), which classifies her as a "younger person" under 20 C.F.R. § 416.963(c). She attended two semesters of college and has vocational training in cosmetology. (R. at 51.) Hall has past work experience as a cosmetologist, a teacher's aide and a dental assistant. (R. at 53-54, 67-68, 246.) Throughout the relevant time period, Hall was self-employed as a cosmetologist, working less than 20 hours a week. (R. at 50, 55.) Hall testified that she also worked as a substitute teacher from 2013 through 2016. (R. at 52.)

Robert Jackson, a vocational expert, also testified at Hall's hearing. (R. at 67-70.) Jackson testified that a hypothetical individual of Hall's age, education and work history, and who would be limited to light work, could perform Hall's past work. (R. at 68.) He also stated that there were other jobs that existed in substantial numbers that such an individual could perform, including jobs as a marker and a cleaner. (R. at 68-69.) Jackson then was asked to consider the same hypothetical individual, but who could frequently climb ramps and stairs, stoop, crouch and crawl; who could occasionally climb ladders, ropes or scaffolds and work around mechanical parts, humidity and wetness, dust, odors, fumes and pulmonary irritants and vibration; who could perform only simple, routine tasks and make simple work-related decisions; who could have only occasional interaction with supervisors, co-workers and the public; and who would be off task five percent of the time and be absent from work one day per month. (R. at 69.) He stated that such an individual could not perform any of Hall's past work, but there were other jobs available that such an individual could perform, including jobs as a marker and a cleaner. (R. at 69-70.) Next, Jackson was asked to consider the same hypothetical individual, but who, in addition to normal breaks, would be off task 15 percent of the time and

would be absent from work two days a month. (R. at 70.) He stated there would be
no jobs available that such an individual could perform. (R. at 70.)

In rendering his decision, the ALJ reviewed records from Dickenson County
Schools; Alan D. Entin, Ph.D., a state agency psychologist; Dr. Eugene Noland,
M.D., a state agency physician; William Carne, Ph.D., a state agency psychologist;
Dr. Robert McGuffin, M.D., a state agency physician; Dr. D. Kevin Blackwell, D.O.;
Dr. Farooq M. Reza, M.D.; Wellmont Lonesome Pine Hospital; Community
Orthopedics; Dickenson Community Hospital; Dr. R. Scott Macdonald, M.D., a
neurologist; Pikeville Medical Center; Norton Community Hospital;
Gastroenterology Associates; Dickenson County Behavioral Health; The Health
Wagon; B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist; Dickenson
Medical Clinic; and Susan Wagner, N.P, a nurse practitioner.

The record shows that Hall treated at Dickenson Medical Clinic from October
2012 through February 2017 for type II diabetes mellitus with hyperglycemia;
fibromyalgia syndrome; hypothyroidism; migraine headaches; gout; a sleep
disorder; major depressive disorder, single episode, unspecified; anxiety disorder,
unspecified; panic disorder; back pain, unspecified; chest pain, unspecified;
hypotension; and sciatica. (R. at 859-968, 1027-48, 1059-97, 1138-74, 1183-1231.)
During this time, Hall routinely reported that medication controlled her pain and
symptoms of anxiety and depression. (R. at 877, 884, 886, 888, 892, 897, 899, 918,
920, 949, 951, 953, 1031, 1033, 1035, 1037, 1143, 1151, 1155, 1193, 1195, 1197,
1199, 1201, 1203, 1205, 1207, 1209, 1211, 1213, 1216, 1218, 1226.)

On December 13, 2012, Dr. D. Kevin Blackwell, D.O., examined Hall. (R. at
326-30.) Dr. Blackwell reported that Hall was in no acute distress with good mental

status. (R. at 327.) Hall had a symmetrical and balanced gait; shoulder and iliac crest heights were good and equal bilaterally; upper and lower joints were without effusions or obvious deformities; upper and lower extremities were normal for size, shape, symmetry and strength; grip strength was good at 5/5 and equal bilaterally; fine motor movement and skill activities of the hands were normal; reflexes in the upper and lower extremities were good and equal bilaterally at 4/4; she had right knee tenderness and some right heel soreness; and she had back tenderness. (R. at 328.) Dr. Blackwell diagnosed scoliosis by history; carpal tunnel syndrome, right; chronic back pain; possible gout; and history of bipolar and anxiety disorder. (R. at 328.)

Dr. Blackwell opined that Hall could sit up to six hours in an eight-hour workday and stand two hours in an eight-hour workday, assuming normal positional changes; she could above-head reach bilaterally, perform foot pedal operation, squat and kneel up to one-third of an eight-hour workday; she could not crouch, crawl or work at unprotected heights; she should avoid repetitive and continuous stair climbing; she could lift items weighing up to 35 pounds occasionally and 25 pounds frequently; and she had no limitations of hand usage, including fine motor movement and skill activities of the hands. (R. at 328-29.) No visual, communicative, hearing or environmental limitations were noted. (R. at 328.)

On January 29, 2014, Dr. Farooq M. Reza, M.D., treated Hall for chronic diarrhea and possible inflammatory bowel disease. (R. at 331-33.) On February 4, 2014, a colonoscopy was normal. (R. at 338-47.) That same day, an endoscopy showed mild patchy erosive gastritis changes, but otherwise was normal. (R. at 335-37.)

The record shows that Hall was seen at Community Orthopedics from February 2014 through May 2014 for complaints of left knee and back pain. (R. at 366-76.) Hall stated that the pain made it difficult for her to stand while performing her job as a hairdresser. (R. at 367, 372.) In April 2014, an MRI of Hall's left knee showed a probable strain / partial tear of a calf muscle at the femoral attachment with tiny joint effusion and a small Baker's cyst.[4] (R. at 375-76.) Examination revealed some tenderness, posteriorly, as well as some tenderness up the posterior aspect of the thigh, and she had questionable positive straight leg raise testing. (R. at 367.) Hall was diagnosed with possible herniation of the disc impinging on the nerve root, and an MRI was ordered. (R. at 367.)

On June 24, 2014, Hall saw Dr. Belal H. Said, M.D., a physician with Pikeville Medical Center, for complaints of gout and joint pain. (R. at 551-57.) Upon examination, Hall had full range of motion of both shoulders and elbows; her hands had Heberden's nodes;[5] she had tenderness in both knees, feet and ankles; and she had intact memory. (R. at 555-56.) Dr. Said diagnosed joint pain; osteoarthritis; fibromyalgia; and possible gout. (R. at 556.)

On October 24, 2014, Hall was admitted to Pikeville Medical Center for uncontrolled diabetes. (R. at 604-05, 658-59.) Hall was initially hospitalized for a hysterectomy and, during her stay, her blood sugar was found to be elevated.[6] (R. at

---

[4] On December 30, 2013, x-rays of Hall's left knee were normal. (R. at 466.)

[5] Heberden's nodes are bony swellings that form on the hands as a result of osteoarthritis. *See* healthline.com/health/osteoarthritis/heberdens-nodes#heberdens-nodes (last visited Apr. 23, 2020.)

[6] Lab results in 2016 showed normal glucose levels and only slightly elevated A1c readings, suggesting that Hall's diabetes was well-controlled. (R. at 973-76.)

604.) She was discharged on October 25, 2014, with a diagnosis of uncontrolled diabetes and history of gout. (R. at 605.)

On January 23, 2015, Dr. R. Scott Macdonald, M.D., a neurologist, examined Hall for her complaints of chronic headaches. (R. at 406-07.) Dr. Macdonald reported that Hall's recent and remote memory was intact; her fund of information was normal; and she had an appropriate affect. (R. at 407.) Hall had normal muscle strength and tone, her sensation was normal, and she had a narrow-based gait. (R. at 407.) Dr. Macdonald diagnosed chronic vascular headaches and possible intermixed muscle contraction headaches. (R. at 407.) On March 12, 2015, an MRI of Hall's brain showed no abnormalities. (R. at 408.)

Throughout 2015 and 2016, while being treated at Dickenson Medical Clinic, Hall's examinations showed multiple trigger points; moderate to severe tenderness of the lumbar spine and paralumbar musculature; negative straight leg raise testing; full range of motion of the extremities; no extremity deformities, edema or erythema; a flat mood; and no signs of anxiety. (R. at 877, 881, 884, 888, 890, 892, 899, 1031-34, 1036, 1038, 1143-44, 1158-59.)

The record shows that Hall was treated at Dickenson County Behavioral Health from March 2015 through August 2017 for complaints of depression and anxiety resulting from financial, family, health, legal[7] and work stressors. (R. at 799-808, 817-57, 1098-1136, 1247-72.) During this time, Hall was diagnosed with generalized anxiety disorder; depressive disorder; and parent-child conflict. (R. at

---

[7] In 2015, Hall reported stress related to being charged with food stamp fraud, as well as testing positive for the use of Suboxone and oxycodone. (R. at 800, 833.)

821-22, 845, 1098.) In 2015, Hall's Global Assessment of Functioning, ("GAF"),[8] score was assessed at 50,[9] with her previous GAF score being 48. (R. at 823, 845.) In March 2015, Hall reported that her ex-husband was mentally, physically and emotionally abusive. (R. at 849.) She reported that she lived independently and was capable of self-care. (R. at 851.) In 2016, Hall reported that she was working at a hair salon and as a substitute teacher. (R. at 1114.) Hall's counselor advised her that "more than likely if she was working full time cutting hair[,] she would probably not get her disability." (R. at 1110.)

On April 9, 2015, Dr. Rathi Narayan, M.D., a gastroenterologist with Gastroenterology Associates, evaluated Hall for her complaints of diarrhea and constipation. (R. at 793-96.) Hall's examination was normal, including musculoskeletal and psychiatric findings. (R. at 794-95.) Dr. Narayan diagnosed lower abdominal pain and irritable bowel syndrome. (R. at 795.)

On September 30, 2015, Alan D. Entin, Ph.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), finding that Hall was mildly restricted in her activities of daily living; experienced mild difficulties maintaining social functioning; experienced mild difficulties maintaining concentration, persistence or pace; and had experienced no repeated episodes of extended-duration decompensation. (R. at 98-99.)

---

[8] The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994).

[9] A GAF score of 41-50 indicates that the individual has "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning...." DSM-IV at 32.

On September 30, 2015, Dr. Eugene Noland, M.D., a state agency physician, opined that Hall had the residual functional capacity to perform light work. (R. at 100-01.) No postural, manipulative, visual, communicative or environmental limitations were noted. (R. at 101.)

On December 1, 2015, Hall presented to the emergency department at Dickenson Community Hospital for complaints of chest pain. (R. at 1235-44.) Chest x-rays showed no acute cardiopulmonary process. (R. at 1244.) Hall was diagnosed with anxiety/panic attacks. (R. at 1237-38.)

On December 18, 2015, Annabelle Pannell, F.N.P., a family nurse practitioner with Dickenson Medical Clinic, completed a mental assessment, indicating that Hall had no limitations on her ability to maintain personal appearance. (R. at 970-72.) She found that Hall had slight limitations on her ability to follow work rules and to understand, remember and carry out simple job instructions. (R. at 970-71.) Pannell opined that Hall had a satisfactory ability to relate to co-workers; to deal with the public; to function independently; and to understand, remember and carry out detailed job instructions. (R. at 970-71.) She found that Hall had a seriously limited ability to use judgment in public; to interact with supervisors; to deal with work stresses; to maintain attention and concentration; to understand, remember and carry out complex job instructions; to behave in an emotionally stable manner; to relate predictably in social situations; and to demonstrate reliability. (R. at 970-71.) Pannell found that Hall would be absent from work more than two days a month. (R. at 972.)

That same day, Pannell completed a medical assessment, indicating that Hall could occasionally lift and carry items weighing up to 10 pounds and frequently lift and carry items weighing up to five pounds; stand and/or walk a total of six hours in

an eight-hour workday, and she could do so for up to one hour without interruption; she could sit a total of four hours in an eight-hour workday, and she could do so for up to 30 minutes without interruption; she could occasionally stoop, kneel, balance and crouch, but never climb and crawl; her ability to reach, to handle, to pull and to see were limited; and she was restricted from working around heights, moving machinery and noise. (R. at 1046-48.) Pannell found that Hall would be absent from work more than two days a month. (R. at 1048.)

On January 7, 2016, William Carne, Ph.D., a state agency psychologist, completed a PRTF, finding that Hall was mildly restricted in her activities of daily living; experienced mild difficulties maintaining social functioning; experienced mild difficulties maintaining concentration, persistence or pace; and had experienced no repeated episodes of extended-duration decompensation. (R. at 113-14.)

On January 7, 2016, Dr. Robert McGuffin, M.D., a state agency physician, opined that Hall had the residual functional capacity to perform light work. (R. at 115-16.) No postural, manipulative, visual, communicative or environmental limitations were noted. (R. at 115.)

On April 6, 2016, Hall established care at The Health Wagon for complaints of anxiety, depression and diabetes. (R. at 978-79.) In May 2016, examination showed that Hall was in no acute distress; she had full range of motion of her neck; her extremities showed no clubbing, cyanosis or edema; she had normal motor strength in her upper and lower extremities; and she had intact sensation. (R. at 981.) Hall was diagnosed with type I diabetes mellitus without complications and an adjustment disorder with mixed anxiety and depressed mood. (R. at 981.) In June 2016, Hall was anxious and intermittently emotional. (R. at 986.) Examination

11

showed that Hall was in no acute distress; she had full range of motion of the neck; her extremities showed no clubbing, cyanosis or edema; she had normal motor strength in her upper and lower extremities; and she had intact sensation. (R. at 986.) Hall was diagnosed with type I diabetes mellitus without complications; anxiety disorder, unspecified; adjustment disorder with mixed anxiety and depressed mood; and chronic fatigue. (R. at 986.)

In October 2016, Hall presented to Dickenson Medical Clinic complaining of increased anxiety and panic attacks related to a positive drug screen and personal stressors. (R. at 1143, 1145.) In December 2016, despite straight leg raise testing eliciting pain, Hall had normal motor strength in her upper and lower extremities and intact sensation. (R. at 1052.)

In January 2017, Hall complained of left arm numbness; some depression; chest pressure; difficulty breathing; and low back pain that radiated into her left leg. (R. at 1050-51.) Hall attributed the chest pressure and difficulty breathing to anxiety. (R. at 1050.) Tauna Gulley, F.N.P., a family nurse practitioner at The Health Wagon, reported that Hall's examination showed paraspinal muscle spasm and tenderness to palpation over the lumbar-sacral spine; positive straight leg raise testing on the left; she had a normal gait; she was cooperative; she made good eye contact; her speech was clear; her thought content was without suicidal ideation or delusions; and her thought process was logical and goal-directed. (R. at 1050.) Gulley diagnosed type I diabetes mellitus and chronic migraines without aura, intractable, without status migrainosus. (R. at 1051.) On March 27, 2017, Hall's examination was normal. (R. at 1176.) She reported that her headaches had improved with medication. (R. at 1177.) Hall denied anxiety, depression and musculoskeletal and neurological symptoms. (R. at 1178.)

When Hall was seen at Dickenson Medical Clinic in March and April 2017, her examinations showed moderate to severe tenderness of the lumbar spine and paralumbar musculature; straight leg raise testing was negative; she had full range of motion of the extremities; she was slightly anxious; and her mood was flat. (R. at 1227, 1230.)

On May 18, 2017, Hall established care with Susan Wagner, N.P., a nurse practitioner. (R. at 1307-12.) Wagner reported that Hall had mild tenderness to palpation in her lower back; her gait was mildly antalgic; she had no gross neurological deficits; and she was moderately anxious. (R. at 1309.) On June 1, 2017, Hall complained of low back pain that radiated into her buttocks and thighs. (R. at 1291-95.) In July 2017, x-rays of Hall's lumbar spine showed mild scoliosis and minimal scatter spurring. (R. at 1315.) X-rays of the cervical spine were normal. (R. at 1316.) On July 27, 2017, Hall complained of severe stress related to family issues and moderate fatigue. (R. at 1301.) Wagner reported that Hall had mild tenderness to palpation in her lower back; her gait was mildly antalgic; she had no gross neurological deficits; and she was moderately anxious. (R. at 1303-04.) Wagner diagnosed type I diabetes; chronic low back pain; hypothyroidism; generalized anxiety disorder; insomnia; malaise; and fatigue. (R. at 1306.) On August 15, 2017, Hall reported increased stress due to working and taking care of her ill mother. (R. at 1249.) On August 23, 2017, Hall reported that medication had improved her low back pain, which improved her quality of life. (R. at 1285.)

On October 4, 2017, B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist, evaluated Hall at the request of Hall's attorney. (R. at 1274-79.) Hall reported that she worked as a hairdresser four to six hours a day. (R. at 1276.) Lanthorn reported that Hall's grooming and hygiene were adequate; her speech was

clear and intelligible; her affect was flat and blunt; she had a depressed mood; and she had displayed no signs of ongoing psychotic processes, delusional thinking or hallucinations. (R. at 1277.) Hall was able to recall four out of five words after 10 minutes; she could not perform Serial 7s correctly; she could not interpret any of the three commonly used adages presented to her; she could spell the word "world" correctly forwards, but not backwards. (R. at 1278.)

The Wechsler Adult Intelligence Scale - Fourth Edition, ("WAIS-IV"), was administered, and Hall obtained a full-scale IQ score of 65.[10] (R. at 1275.) The Minnesota Multiphasic Personality Inventory – 2, ("MMPI-2"), was administered; however, it was discontinued due to Hall's inability to read the questions correctly and to understand the vocabulary imbedded within the questions. (R. at 1279.) Lanthorn diagnosed major depressive disorder, recurrent, severe with anxious distress; and panic disorder. (R. at 1279.) Lanthorn opined that Hall was competent to manage her own funds. (R. at 1279.) Lanthorn reported that Hall had limited cognitive skills and was functioning in the mildly mentally retarded range. (R. at 1279.) Lanthorn completed a mental assessment on October 16, 2017, indicating that Hall had a satisfactory ability to follow work rules; to function independently; to understand, remember and carry out simple job instructions; to maintain personal appearance; to behave in an emotionally stable manner; and to demonstrate reliability. (R. at 1281-83.)  He found that Hall had a seriously limited ability to relate to co-workers; to deal with the public; to use judgment in public; to interact with supervisors; to deal with work stresses; to maintain attention and concentration; to understand, remember and carry out detailed job instructions; and to demonstrate

---

[10] The ALJ specifically rejected Lanthorn's finding that Hall was mildly mentally retarded because it was contradicted by her work and academic history. (R. at 31.) Hall does not contest this finding.

reliability. (R. at 1281-82.) Lanthorn opined that Hall had no useful ability to understand, remember and carry out complex job instructions. (R. at 1282.)

On October 18, 2017, Wagner completed a medical assessment, indicating that Hall could occasionally lift and carry items weighing less than five pounds and frequently lift and carry items weighing less than three pounds. (R. at 1321-23.) She opined that Hall could stand and/or walk a total of five hours in an eight-hour workday, but she could do so for less than 45 minutes without interruption; she could sit a total of three hours in an eight-hour workday, but she could do so for less than one hour without interruption; she could frequently balance; she could occasionally kneel, but never climb, stoop, crouch or crawl; her ability to push and pull was impaired; and she was restricted from working around moving machinery, noise, fumes, humidity and vibration. (R. at 1321-23.) Wagner opined that Hall would be absent from work more than two days a month. (R. at 1323.)

That same day, Wagner completed a mental assessment, indicating that Hall had an unlimited ability to follow work rules and to maintain personal appearance. (R. at 1325-27.) She found that Hall had a satisfactory ability to relate to co-workers and to interact with supervisors. (R. at 1325-26.) Wagner found that Hall was seriously limited in her ability to deal with the public; to use judgment in public; to function independently; and to understand, remember and carry out simple and detailed job instructions. (R. at 1325-26.) She opined that Hall had no useful ability to deal with work stresses; to maintain attention and concentration; to understand, remember and carry out complex job instructions; to behave in an emotionally stable manner; to relate predictably in social situations; and to demonstrate reliability. (R. at 1325-26.) Wagner opined that Hall would be absent from work more than two days a month. (R. at 1327.)

*III. Analysis*

The Commissioner uses a five-step process in evaluating SSI claims. *See* 20 C.F.R. § 416.920 (2019). *See also Heckler v. Campbell,* 461 U.S. 458, 460-62 (1983); *Hall v. Harris,* 658 F. 2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 416.920(a)(4) (2019).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C. § 1382c(a)(3)(A)-(B); *McLain v, Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano,* 617 F.2d 1050, 1053 (4th Cir. 1980).

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial

evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers,* 131 F.3d 438, 439-40 (4th Cir. 1997).

Hall argues that the ALJ erred by improperly determining her residual functional capacity. (Plaintiff's Memorandum In Support Of Her Motion For Summary Judgment, ("Plaintiff's Brief"), at 5-7.) In particular, Hall argues that the ALJ erred by failing to give controlling weight to the opinions of her treating medical care providers, Pannell, Wagner and Lanthorn, and by giving controlling weight to the opinions of the state agency physicians. (Plaintiff's Brief at 6-7.) Hall contends that the state agency physicians' assessments were "stale [and] outdated." (Plaintiff's Brief at 7.)

The ALJ found that Hall had the residual functional capacity to perform light work that did not require more than frequent climbing of ramps and stairs, stooping, crouching and crawling; that required no more than occasional climbing of ladders, ropes or scaffolds; that required no more than occasional exposure to moving mechanical parts, humidity and wetness, dust, odors, fumes, pulmonary irritants and vibration; that did not require her to perform more than simple, routine tasks and make simple work-related decisions; and that did not require more than occasional interaction with co-workers, supervisors and the public. (R. at 24.) In addition, the ALJ found that Hall would be off task five percent of an eight-hour workday and that she would be absent from work one day per month. (R. at 24.)

In making this residual functional capacity finding, the ALJ stated that he was giving "little weight" to Pannell's December 2015 opinions because they were

inconsistent with the overall medical evidence of record, including her own treatment notes. (R. at 30, 970-72, 1046-48.) *See* 20 C.F.R. § 416.927(c)(4) (providing for more weight where an opinion is consistent with the record as a whole). The ALJ stated that, although Hall was diagnosed with depression and anxiety, she generally reported that her anxiety was controlled with medication; she denied significant mental symptoms; and her mental status examinations did not show significant abnormalities. (R. at 30.) The ALJ also noted that, although Hall complained of financial and domestic stressors, there was no evidence that she handled them inappropriately. (R. at 30.) The ALJ noted that Hall provided adequate care for her two children, and there was no indication that her symptoms interfered with her ability to work as a hairdresser or a substitute teacher. (R. at 30.)

The ALJ also gave "little weight" to Pannell's opinion that Hall was limited to sedentary[11] work and required more than two absences per month because it was inconsistent with her treatment notes. (R. at 30, 1046-48.) Although Pannell cited objective findings in support of her opinion, the findings were not consistent with the relatively normal examination findings in her treatment notes. (R. at 30.) The ALJ noted that Pannell's treatment notes showed Hall's physical examinations were generally unremarkable,[12] and Hall reported improvement with routine treatment. (R. at 30.) The record shows that in January 2015, Dr. Macdonald reported that Hall

---

[11] Sedentary work involves lifting items weighing up to 10 pounds with occasional lifting or carrying of articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. *See* 20 C.F.R. § 416.967(a) (2019).

[12] Pannell's treatment notes show that Hall had multiple trigger points; negative straight leg raise testing; full range of motion of the extremities; no deformities, edema or erythema; normal upper body strength; her affect was normal; and she did not appear anxious. (R. at 877, 879, 881, 884, 886, 888, 890, 892, 899, 920, 924.)

had normal muscle strength, tone and sensation. (R. at 407.) In April 2015, Dr. Narayan reported that Hall's examination was normal, including musculoskeletal and psychiatric findings. (R. at 794-95.) In May and June 2016, Hall had full range of motion of her neck; her extremities showed no clubbing, cyanosis or edema; she had normal motor strength in her upper and lower extremities; and she had intact sensation. (R. at 981, 986.) In March 2017, Hall's examination was normal. (R. at 1176.) In May and July 2017, Hall had no gross neurological deficits, and in July 2017, x-rays of Hall's lumbar spine showed only mild scoliosis and minimal scatter spurring. (R. at 1304, 1309, 1315.)

Next, the ALJ gave "little weight" to Wagner's opinions, dated October 2017, limiting Hall to sedentary work, because her treatment notes did not support a finding of such extreme limitations. (R. at 30, 1321-23, 1325-27.) The ALJ explained that Wagner saw Hall on only a few occasions in 2017, and her records showed that Hall had only mild tenderness in the lower back and a mildly antalgic gait, but her feet were neurologically intact, and she had no neurological or sensory deficits. (R. at 30, 1287, 1293, 1298, 1303-04, 1309.) As noted by the ALJ, Hall reported that her pain medication was beneficial, and she rated her pain at only three out of 10 in severity. (R. at 30-31, 1285.) In addition, the ALJ gave "little weight" to Wagner's opinion that Hall had no useful ability in areas of work-related mental functioning because it also was inconsistent with the medical evidence of record. (R. at 31, 1325-27.) The ALJ noted that Wagner's treatment records suggested that Hall experienced anxiety and depression due to her many stressors, but there was no evidence that she was unable to cope with them. (R. at 31.) To the contrary, Hall continued to work as a hairdresser and a substitute teacher. (R. at 31.)

The ALJ also considered Lanthorn's opinion and gave it "little weight" because it was not supported by the overall medical evidence of record. (R. at 31, 1281-83.) The ALJ acknowledged Lanthorn's assessment that Hall had a flat affect and a depressed mood was consistent with the findings of her treating practitioners. (R. at 31, 1277.) The ALJ explained that this finding suggested that Hall had ongoing depression and anxiety symptoms, which could be distracting. (R. at 31-32.) However, the ALJ found that the record also showed that Hall had good recall and was able to spell the word "world" correctly. (R. at 32, 1278.) The ALJ acknowledged that Hall had difficulty with Serial 7s, suggesting poor calculation ability or concentration, which supported his finding that Hall would be limited to simple, routine tasks and simple work-related decisions, but did not support all of the limitations assessed by Lanthorn. (R. at 32.) The ALJ noted Hall's ability to work four to six hours per day with the public as a hairdresser suggested that she had adequate social functioning to at least occasionally interact with others in a workplace setting. (R. at 32.) In addition, the ALJ noted that Hall sometimes worked as a substitute teacher, which required constant interaction with the public and high levels of stress watching over a classroom of children. (R. at 32.) Furthermore, Hall routinely reported that her symptoms of depression and anxiety were controlled with medication. (R. at 877, 884, 886, 888, 892, 897, 918, 920, 951, 1031, 1033, 1035, 1037, 1143, 1151, 1155, 1226.) "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler,* 785 F.2d 1163, 1166 (4th Cir. 1986). For all of these reasons, the ALJ found that Lanthorn's opinion was entitled to little weight. (R. at 32.)

The ALJ gave "significant weight" to the state agency consultants' medical assessments and "limited weight" to the state agency psychologists' mental assessments. (R. at 32-33.) While the ALJ, in general, is required to give more

weight to opinion evidence from examining versus nonexamining medical sources, the ALJ is not required to give controlling weight to the opinions of a treating source. *See* 20 C.F.R. § 416.927(c) (2019). In fact, even an opinion from a treating physician will be accorded significantly less weight if it is "not supported by clinical evidence or if it is inconsistent with other substantial evidence…." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). Furthermore, the ALJ is entitled to rely on a nonexamining source's medical opinion where that opinion is supported by the record as a whole. *See Alla Z. v. Berryhill*, 2018 WL 4704060, at *11 (W.D. Va. Sept. 30, 2018); *see also* 20 C.F.R. § 416.927(c)(3) (2019).

The ALJ gave "significant weight" to the state agency physicians' assessments, who opined that Hall could perform light work. (R. at 32, 100-01, 115-16.) The ALJ noted that the state agency physicians' assessments deserved significant weight in "a case such as this" where Hall sought only routine treatment with medications, which benefited Hall. (R. at 32-33.) Treatment records routinely showed that Hall reported her pain was controlled with medication. (R. at 899, 920, 949, 953, 1155, 1193, 1195, 1197, 1199, 1201, 1203, 1205, 1207, 1209, 1211, 1213, 1216, 1218.) *See Gross,* 785 F.2d at 1166.

The ALJ gave "limited weight" to the opinions of the state agency psychologists, who found that Hall's mental impairments were nonsevere. (R. at 32, 98-99, 113-14.) The ALJ explained that the evidence showed consistent signs of depression and anxiety, suggesting that Hall would have a somewhat limited ability to concentrate on detailed or complex work due to her mental symptoms. (R. at 32.) Therefore, the ALJ limited Hall to only simple work. (R. at 32.) The ALJ also found that Hall would be off task five percent of the workday and absent from work one day per month. (R. at 24.) The ALJ limited Hall to occasional interaction with the

public, co-workers and supervisors, finding her work as a hairdresser and a substitute teacher showed that she could interact appropriately with others in the workplace. (R. at 32.)

Under the regulations, the ALJ was entitled to rely on the state agency psychologists' and physicians' assessments. *See* 20 C.F.R. § 416.913a(3)(b)(1) (2019) ("State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation."); *Campbell v. Bowen*, 800 F.2d 1247, 1250 (4th Cir. 1986) (Fourth Circuit cases "clearly contemplate the possibility that [treating physician] opinions may be rejected in particular cases in deference to conflicting opinions of non-treating physicians."); Social Security Ruling, ("S.S.R."), 96-6p, WEST'S SOCIAL SECURITY REPORTING SERVICE, Rulings (West Supp. 2013) ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.").

Hall argues that the ALJ should have given the state agency physicians' assessments less weight because they were "stale [and] outdated." (Plaintiff's Brief at 7.) The simple fact that those opinions came later in time than the state agency opinions does not mean that they should be accorded greater weight. As the Third Circuit has noted, "[B]ecause state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision. The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011); *see also Stricker v. Colvin*, 2016 WL 543216, at *3 (N.D. W. Va. Feb. 10, 2016) ("[A] lapse of time between State agency physician opinions and the ALJ's decision does not render the opinion stale.")

It is apparent from the ALJ's very thorough decision that he carefully evaluated the whole record before him when weighing the opinion evidence, and he ultimately found the state agency medical opinions were consistent with the record as a whole. Given Hall's complaints, the ALJ limited Hall to additional postural and environmental limitations not assessed by the state agency physicians. (R. at 33.) The ALJ imposed postural limitations and allowed some flexibility for time off-task and absences to account for her back pain, joint pain, headaches and overall pain. (R. at 33.) Based on this, I find that substantial evidence exists to support the ALJ's finding that Hall had the residual functional capacity to perform a limited range of light work.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1.  Substantial evidence exists in the record to support the ALJ's finding with regard to Hall's residual functional capacity;

2.  Substantial evidence exists in the record to support the ALJ's weighing of the medical evidence; and

3.  Substantial evidence exists in the record to support the Commissioner's finding that Hall was not disabled under the Act and was not entitled to SSI benefits.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Hall's motion for summary judgment, deny the Commissioner's motion for summary judgment and affirm the Commissioner's decision deny benefits.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. §
636(b)(1)(C):

> Within fourteen days after being served with a copy [of this
> Report and Recommendation], any party may serve and file written
> objections to such proposed findings and recommendations as provided
> by rules of court. A judge of the court shall make a de novo
> determination of those portions of the report or specified proposed
> findings or recommendations to which objection is made. A judge of
> the court may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge. The judge may also
> receive further evidence or recommit the matter to the magistrate judge
> with instructions.

Failure to file timely written objections to these proposed findings and

recommendations within 14 days could waive appellate review. At the conclusion

of the 14-day period, the Clerk is directed to transmit the record in this matter to the

Honorable James P. Jones, United States District Judge.

The Clerk is directed to send certified copies of this Report and

Recommendation to all counsel of record at this time.

DATED:    April 23, 2020.

/s/ *Pamela Meade Sargent*

UNITED STATES MAGISTRATE JUDGE

24